## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ethiopian Airlines | Case No. _____ |
| Plaintiff, | |
| v. | |
| Hencock Alemayehu (*a.k.a.* Henok A Degfu), and Ze Habesha, LLC | |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff Ethiopian Airlines and for its Complaint against Defendants, and each of them, states and alleges:

### Introduction

1. This is a suit by Ethiopian Airlines against Hencock Alemayehu and Ze Habesha, LLC for defamation. This defamation was published in the videotaped interview broadcast on YouTube on and after April 15, 2020 entitled: "The Hidden Secrets of Ethiopian Airlines" a translation of which is attached as Exhibit A and is incorporated herein.

### Parties

2. Plaintiff Ethiopian Airlines ("ET") is the largest airline in Africa and is wholly owned by Federal Democratic Republic of Ethiopia ("Ethiopia"). ET is an instrumentality of the Ethiopian Government pursuant to 28 U.S.C. § 1603(b).

3. Defendant Ze Habesha, LLC is a domestic limited liability company registered to do business, and doing business, in the State of Minnesota. Ze Habesha is engaged in the business

of online publications. The principal place of business of Ze Habesha LLC is 14157 Portland Avenue, in the City of Burnsville, State of Minnesota.

4. Defendant Hencock Alemayehu (*a.k.a.* Henok A Degfu) is the owner and registered agent of Ze Habesha LLC and the publisher of the defamatory statements. The registered office address for Ze Habesha LLC, and the address of Hencock Alemayehu, is 6938 Portland Avenue South, in the City of Richfield, State of Minnesota.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1330 because Plaintiff is an instrumentality of Ethiopia.

6. This Court has venue over this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

7. This Court has personal jurisdiction over the Defendants because they are citizens of Minnesota, and otherwise have done business continuously in this District. Defendants are subject to both general and specific personal jurisdiction. Defendants engage in continuous and systematic business in Minnesota. They have minimum contacts with Minnesota such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

## Statement of Facts

8. On or about April 15, 2020, Defendants began publishing over the internet defamatory statements about ET, as listed herein and contained in Exhibit A herein.

9. Plaintiff asked Defendants to cease and desist from publishing the defamatory statements, but Defendants refused.

10. More specifically, and without limitation, Defendants falsely and maliciously published the following defamatory statements during three videotaped interviews broadcast by Ze Habesha, LLC on YouTube on and after April 15, 2020

11. Defendants falsely accusing Ethiopian Airlines of deliberately importing COVID-19, a deadly and contagious disease, to Africa and to Ethiopia by stating:

### Statement 1

*The CEO of Ethiopian has toiled hard to make the Airline importer and distributor of the virus even to Ethiopia. In fact, the good named Ethiopian Airlines has been said to be the first cause for the spread of the virus throughout Africa. (Video 1 @3:37).*

### Statement 2

*If the world had not closed its door for the entrance of any flights, Ethiopian Airlines would have continued it journey carrying its virus, carrying not humans, but their corpse from country to country. (Video 1 @ 6:13).*

12. Statements 1 and 2 are false and defamatory. COVID-19 is a global pandemic that did not originate with Ethiopian Airlines and was not spread by Ethiopian Airlines. WHO and Africa CDC concluded that that most of African states 'patient zero' came from Europe by other Airlines.

13. Defendants falsely accused Ethiopian Airlines of laying off its employees as a result of the COVID-19 virus by stating:

### Statement 3

*We also heard Mr. Tewolde saying on the media that there is not any employee laid off due to Coronavirus. This is a second mistake! In spite of this, the Chairperson of the Airlines Basic Trade Union has confirmed that more than 500 employees have been laid off. There was a question asking why telling such downgraded lies was desired; there is no reason without attacking the labeled employees as 'enemies' using the favorable moment. (Video 1 @ 6:59).*

14.     Statement 3 is false and defamatory. The Ethiopian Ministry of Labour investigated and confirmed that there have been no layoffs by Ethiopian Airlines.

15.     Defendants falsely accused Ethiopian Airlines' CEO of operating his own prison on the Ethiopian Airlines Compound by stating:

### Statement 4

*We have also been informed that Tewolde GebreMariam has his own prison in the premises of the Airline. (Video 1 @ 10:20).*

16.     Statement 4 is false and defamatory. Bole International Airport has a Federal Police station to ensure peace and security in and around the Airport, but neither Ethiopian Airlines nor its Group CEO operate a prison.

17.     Defendants falsely alleged that Ethiopian Airlines illegally awarded a three hundred-million-dollar Airport expansion project to Kiros Abrha, an employee of METEC by stating:

### Statement 5

*The second surprising scam was carried out jointly with Metal and Engineering Corporation (METEK). Mr. Kiros Abreha, the Head of METEK has been paid 300 million dollars /Ten billion birr/ to construct Ethiopian Airlines Expansion Project. This sum can build a full-fledged and globally standard airport; let alone the small infrastructure he has constructed." (Video 1 @ 9:28).*

18.     Statement 5 is false and defamatory. Ethiopian Airports was an independent company until 2017. It merged with Ethiopian Airlines on July 8, 2017. The Airport expansion project agreement was signed in 2015 when Ethiopian Airlines was an independent company and Ethiopian Airlines had nothing to do with the procurement of this contract. Further, CCCC, a Chinese company, was awarded the contract.

19. Defendants falsely accused Ethiopian Airlines of intentionally purchased B787 Dreamliner aircraft with severe product quality problems by stating:

### Statement 6

*No one was interested to buy from Boeing the 5 aircraft which are called E-787 Dreamliner. But Ethiopian Airlines purchased these aircraft which were parked for years. The airplanes bought in billions have been a debt for Ethiopia for they had severe product quality problem. (Video 1 @ 8:44).*

20. Statement 6 is false and defamatory. The statement questions the airworthiness and safety of the aircraft acquired by Ethiopian Airlines, and the debt created by acquiring those aircraft. There are more than 900 E-787 Dreamliner Aircraft in operation and other Airlines have confirmed the safety and efficiency of this aircraft.

21. Defendants falsely alleged that Ethiopian Airlines' officials attempted to steal a pallet of Ethiopian Government Birr notes printed in Germany and transported by the Airline to Ethiopia by stating:

### Statement 7

*Ethiopian airlines was entrusted to transport the money. But some days before the transportation, I received shocking information from a source which I do not want to mention. The information was about a plotted theft on one of the pallets. I was hit by shock and fear alternatively due to 2 reasons. The first is the courage of stealing public resource by our own citizens at broad daylight. The other was my knowledge that such a looting was not only carried out by Ethiopian Airlines officials. (Video 2 @ 1:33).*

22. Statement 7 is false and defamatory. The national bank of Ethiopia charters cargo flights to transport money from the place of printing to Ethiopia. This charter is guarded and secured by armed personnel from origin to destination. There has never been any theft or attempt to steal a pallet of Ethiopian Government Birr notes

23. Defendants falsely alleged that Ethiopian Airlines customers were paying ticket prices at an exchange rate (USD to ETB) based on a "black market tariff" rate.

### Statement 8

*The opposite is true in Ethiopian ticket offices working in African countries. In fact, these offices charge their passengers, not in the exchange rate of the countries' banks; they rather charge the customers in black market tariff. This is a proven fact any person can easily establish. (Video 2 @ 11:30).*

24. Statement 8 is false and defamatory. Passenger tickets are normally sold at the origin station. However, some travel agents sell tickets from a place different from the flight origin. In such cases, in order to adjust the currency variation, service charge is added. Ethiopian Airlines has never imposed a black-market tariff rate.

25. Defendants falsely claimed that Ethiopian Airlines does business in Barcelona and Madrid to benefit certain individuals connected with its Group Chief Executive Officer (GCEO) and that employees have been recalled based upon disagreements with these individuals by stating:

### Statement 9

*The opening of Barcelona and Madrid routes were not based on feasibility studies as profitable. Believe it or not, the routes to these countries were tailor made to benefit the female friend of Mr. Tewolde GebreMariam. In fact, this disgraceful act implies how extreme the level of corruption is at Ethiopian Airlines. The name of the woman is Maria Teresa Dedus. She is the owner Air Travel Management JSA Spain. She has been illegally nominated by Mr. Tewolde GbreMariam as full Ethiopian Airlines representative in Spain. (Video 2 @ 13:30).*

*But the newly assigned Mr. Bekele could not work peacefully with the Spaniard woman, Maria Teresa due to her malpractice. Then, Mr. Tewolde GebreMariam called Mr. Bekele to Addis Ababa and demoted him to a lower position from the director level he used to hold. (Video 2 @ 14:32).*

26. Statement 9 is false and defamatory. Ethiopian Airlines does not open markets or select routes for corrupt reasons or for the personal benefit of its management. Ethiopian Airlines conducts a cost benefit analysis on each market to determine whether to open or outsource its business.

27. Defendants falsely alleged that KLM Airlines repatriated its money from Ethiopia by changing the local currency to USD and Euro on the black market and that Ethiopian Airlines' management was involved in embezzling money from the company by stating:

### Statement 10

*While the rich Europeans, KLM, committed such illegal acts in broad daylight in Addis Ababa to take their money via black market, Ethiopian Airlines officials, on their part, were committing theft to benefit from Company's money. (Video 2 @ 15:50).*

28. Statement 10 is false and defamatory. Ethiopian Airlines and KLM have no partnership relationship and no cooperation agreement. They conduct their own business independently.

29. Defendants falsely alleged that Ethiopian Airlines executives conspired to delete the black box record of the Ethiopian Airline 409 crash by stating:

### Statement 11

*The next day it was found that the recorded conversation was deleted from the black box. Only God knows who gave the orders to delete the recording. Amazing conspiracy! The team which travelled from Addis came back home with broken heart, and explained what happened to Mr. Girma Wakie and Mr. Tewolde. These executives have to date covered up the despicable crime from Ethiopians and the entire world. You won't forget what you replied to me when I raised a question to you mentioning the rumors I heard at the time. You confirmed the truth for me unequivocally. After you told me things that I didn't know, I remember how you concluded your remark saying: "We have put this matter to rest agreeing that we won't speculate in our favor and that they won't blame pilot error for the accident. (Video 3 @ 12:45).*

30. Statement 11 is false and defamatory. In accordance with ICAO annex rules, the investigation of the Ethiopian Airline 409 crash was conducted by aeronautical authorities of three countries. These countries were the country of the operator, the country of the occurrence and the country of the manufacturer. The investigation was conducted according to international standards and Ethiopian Airlines had no control over the process.

31. Defendants falsely claimed that the New York Area Manager house was sold and the proceeds used to unlawfully enrich Mr. Tewolde by stating:

**Statement 12**

*When you served the airline as an Area manager in New York, I remember that you lived in an opulent comfort in the company apartment. However, you sold the property for your own sake. Don't you think it would be better to report this crime to the federal police rather than to the media as to where the money was deposited. (Video 3 @ 15:20).*

32. Statement 12 is false and defamatory. This alleged "crime" never occurred. Corporate property was not misappropriated. Ethiopian Airlines has secure and state of the art asset control over its assets.

33. Defendants falsely claimed that while Mr. Tewolde was CEO he stopped the practice of depositing 20% of Area Managers salary into a forex blocked saving by stating:

**Statement 13**

*Mr. Tewolde, you have benefited for 12 years when you were an Area manager in India, Saudi Arabia and New York. However, after you became Deputy CEO, you claimed that the 20% block saving to outstation staff was unnecessary and stopped it. I hope you won't mock me claiming that you did that for the sake of the airline. (Video 3 @ 16:29).*

34. Statement 13 is false and defamatory. There was no change in the employee salary arrangements and the statement that 20% of employee salaries was corruptly diverted by ET management is not true.

35. Defendants falsely claimed that the connection for the Addis Ababa-Washington route was corruptly changed from Rome to Dublin for five years for the personal benefit of Mr. Tewolde and his accomplices by stating:

### Statement 14

> *However, in the interest of Mr. Tewolde's and his accomplices, the area office in Rome was closed and a new office was opened in Dublin. (@ 17:25 minutes of the video). This flight service was loss-making and was suspended five years later. Why not suspend it within six months as it was a loss-making station? Why not suspend the flight within a year or two? Why is it necessary to run it for five years? These questions ignite suspicion. I would like to announce to the Ethiopian government that it would discover corrupted practices if it scrutinizes the case. (Video 3 @ 19:59).*

36. Statement 14 is false and defamatory. Airline routes are not configured for the personal benefit of ET management at the financial loss of ET. There were compelling business reasons for the change from Rome to Dublin and Ethiopian Airlines financially benefited from that change.

37. Defendants falsely claimed that Ethiopian Airlines' LAX Area Manager stayed in the USA for a year doing nothing, but received a salary because she is an "intimate friend" of the airlines Chief Executive Officer by stating:

### Statement 15

> *ET's area manager in Los Angeles is Mr. Tewolde's intimate friend, Mrs. Sasahulish Leake. Even though she was supposed to return back to Addis Ababa following the closure of the office in the US, she overstayed in Los Angeles for a year. She was receiving her monthly salary under Mr. Tewolde's order. It is even more*

*surprising that no one from the airline's Board members and from the Finance managers tried to investigate this case. (Video 3 @ 20:31).*

38. Statement 15 is false and defamatory. Ethiopian Airlines' written policy on appointments and recalls of Area Managers has always been followed.

39. Defendants falsely alleged that ex-employee Girum Abebe was unfairly attacked and dismissed from his job for writing an email to the GCEO by stating:

**Statement 16**

*The goal of the demotion is similar to TPLF's system that goes- "Don't fire him yourself, but make him fire himself". The system is mistreating employees and making them fire themselves. The conspiracy has failed! Mr. Girum has continued serving the airline in the face of the adversity. Mr. Tewolde and his accomplices accused him again of agitating employees to flee abroad. Mr. Girum received a temporary letter of suspension from Tadele Barega and he was eventually sucked. (Video 3 @ 24:02).*

40. Statement 16 is false and defamatory. The employment contract of Girum Abebe was terminated due to misconduct. Girum Abebe's wrongful termination claim was litigated and dismissed by the court.

41. Defendants failed to exercise due care in making, publishing, and distributing these false and defamatory statements.

42. Defendants published and distributed these false and defamatory statements with knowledge that the statements were false, or with a reckless disregard for the truth.

43. Defendants published the false and defamatory statements with a deliberate disregard for the rights of Plaintiff.

44. Defendant Alemayehu made the false and defamatory statements while acting in the course and scope of his position with Ze Habesha, LLC. Ze Habesha, LLC is vicariously liable for his actions.

45. The statements are defamatory *per se.*

46. As a direct result of the publication of these false and defamatory statements, ET has been injured in its business and business reputation, it has sustained a loss of sales and revenue, and has otherwise sustained damages in an amount substantially in excess of the sum of Twenty Five Million and no/100 ($25,000,000.00) Dollars.

**WHEREFORE,** Plaintiff prays judgment against Defendants, and each of them, for compensatory damages in an amount in excess of the sum of Twenty Five Million and no/100 ($25,000,000.00) Dollars, for its costs and disbursements herein, and for such other and further relief as the Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: May 28, 2020

COLLINS, BUCKLEY, SAUNTRY & HAUGH, P.L.L.P.

BY: */s/ Patrick T. Tierney*
　　PATRICK T. TIERNEY (#109939)
Attorneys for Plaintiff
W-1100 First National Bank Building
332 Minnesota Street
St. Paul, Minnesota 55101
Telephone: 651/227-0611
Fax: 651/227-0758
Email: ptierney@cbsh.net